IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

EMRYS JULIAN ALEXANDER,

                Plaintiff,                        CV-11-102-ST

       v.                               FINDINGS AND
                                          RECOMMENDATION

JEFFREY DORN; ROSANNE SIZER;
PORTLAND POLICE BUREAU; CITY OF
PORTLAND, OR; AND 1 to 10 UNKNOWN
DEFENDANTS TO BE DETERMINED
THROUGH DISCOVERY, in their individual and
professional capacities,

                Defendants.           

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Emrys Julian Alexander ("Alexander"), a prisoner in state custody proceeding

*pro se*, filed this action under 42 USC § 1983 on January 25, 2011.  Alexander alleges several

claims for violations of his federal constitutional rights, as well as related claims for various torts

1 - FINDINGS AND RECOMMENDATION

under state law.  Each of his claims arise out of an encounter between Alexander and a K-9

police officer with the Portland Police Bureau ("PPB"), Jeffrey Dorn ("Dorn"), and Dorn's

canine companion, a German Shepherd named "Ranger."  Defendants include Dorn, the PPB,

PPB's then-Chief of Police, Rosanne Sizer ("Sizer"), the City of Portland, and 10 unknown

defendants.

Defendants have filed Rule 12 Motions, and in the Alternative, Motion for Summary

Judgment (docket #10).  On May 16, 2011, this court notified Alexander of the standards

governing summary judgment motions.  Summary Judgment Advice Notice (docket #15).

Defendants seek to have this court dismiss Alexander's complaint on the basis that he has failed

to identify the date of the encounter underlying his claims.  Alternatively, defendants argue that

Alexander filed his complaint outside the applicable two-year statute of limitations which

governs each of his claims.  In response, Alexander relies on the doctrines of equitable tolling

and equitable estoppel.  For the reasons that follow, defendants' summary judgment motion

should be granted, and this case should be dismissed with prejudice.

## ALLEGATIONS

On a date not alleged in the Complaint, Alexander was jogging across a street near Mall

205 in Portland, Oregon, when Dorn arrived in a car and ordered him to the ground.  Complaint,

¶ 12.  Just prior to arriving, Dorn was notified that an unknown person had jumped into the bed

of a truck that was traveling on Stark Street.  *Id*, ¶ 13.  However, Dorn had not seen Alexander

commit any crime and had no description of the suspect.  *Id*, ¶¶ 13-14.

When questioned as to the reason for the order to get down on the ground, Dorn

responded that he would "figure this out in a moment."  *Id*, ¶ 16.  Dissatisfied with Dorn's

response, Alexander "got up off the ground and began to run away." *Id*, ¶ 18. Dorn responded

by releasing Ranger from his police cruiser and ordering Ranger to "take" Alexander. *Id*, ¶ 19.

Dorn ordered Ranger to bite Alexander multiple times and allowed Ranger to hold the bite for an

atypically long time which left Alexander with "injuries that resembled a shark attack." *Id*, ¶ 20.

Following this encounter with Dorn, Alexander was charged with "a litany of counts and

charges," including unauthorized use of a motor vehicle and escape, and was lodged in the

Multnomah County Detention Center. *Id*, ¶ 21. Alexander was already on supervised release in

the federal correctional system. *Id*, ¶ 22. As a result of the alleged new criminal activity,

Alexander's term of supervised release was revoked and a United States Marshal's hold was

placed on him. *Id*. Alexander opted to "kill his paper" and received a 24 month term of

imprisonment and no reimposition of supervised release. *Id*, ¶ 23.

Alexander alleges that defendants violated his rights under the Fourth, Fifth, Eighth, and

Fourteenth Amendments and seeks redress pursuant to 42 USC § 1983. *Id*, ¶¶ 32-36. He also

alleges a multitude of tort claims under state law, including claims for: (1) false arrest and

imprisonment; (2) assault and battery; (3) malicious prosecution; (4) abuse of process;

(5) intentional and negligent infliction of emotional distress; and (6) negligence and gross

negligence. *Id*, ¶¶ 37-39.

## **FINDINGS**

The critical question in this case is whether Alexander's claims can survive defendants'

statute of limitations argument. Defendants urge that this court should dismiss Alexander's

pleadings on the basis that he has failed to allege the date of his encounter with Dorn, Ranger,

and the unknown defendants. The date of the encounter is not alleged in the Complaint.

However, a "district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F3d 699, 706 (9th Cir), *cert denied*, 525 US 1001 (1998), quoting *Branch v. Tunnell*, 14 F3d 449, 454 (9th Cir 1994). Alexander alleges that he "caused a written notice of tort claim to be filed with and served on" defendants pursuant to Oregon law, but did not attach the notice to the Complaint. Complaint, ¶ 37. Defendants have remedied that deficiency by submitting a copy of his Notice of Tort Claim which states the "Date of Loss" as March 9, 2008. Dorn Aff., ¶ 7 and Ex. 4. Alexander confirms that March 9, 2008, is the correct date. Alexander Decl., ¶ 2. Because the parties agree on the date of the encounter, dismissal of the Complaint for failure to allege that date should be denied.

Because the date of the encounter is well over two years prior to the filing of this case, defendants alternatively argue that they are entitled to summary judgment against Alexander's claims. Oregon law imposes a two year statute of limitations for personal injury claims. ORS 12.110. In addition to controlling Alexander's state law tort claims, that statute of limitations applies to the claims brought under 42 USC § 1983. *Cooper v. City of Ashland*, 871 F2d 104, 105 (9th Cir 1989). Alexander filed this case nearly three years after the March 9, 2008 encounter on which his claims are based.[1] Nevertheless, he contends that equitable estoppel or

---

[1] The malicious prosecution claim did not accrue until a later date when the charges against Alexander were dropped. However, Alexander does not allege that date. Complaint, ¶ 23. Because he does not argue that it was within the two-year window before he filed his Complaint, this court assumes that the charges were dropped shortly after his arrest, well outside the two-year window.

equitable tolling apply to excuse that late filing.  Unfortunately for Alexander, the record does

not support the application of either doctrine.

**I**.  **<u>Equitable Tolling</u>**

   Alexander relies on the doctrine of equitable tolling to excuse his late filing.  Equitable

tolling:

> permits a plaintiff to avoid the bar of the statute of limitations if
> despite the exercise of all due diligence he is unable to obtain vital
> information bearing on the existence of his claim.  Because § 1983
> does not contain a limitations period, the court adopts the state's
> statute of limitations for personal injury actions.  The "closely
> related questions of tolling and application" also are governed by
> state law.

*D.H.M. v. Oregon Youth Auth.*, No. CV 06-143-KI, 2008 WL 1766727, at *5 (D Or April 8,

2008) (citations omitted).

   The Oregon Tort Claims Act makes no provision for equitable tolling and instead

requires that actions arising from the act or omission of a public employee or agent of a public

body within its scope shall be commenced within two years after the alleged loss or injury.

ORS 30.275(9).  Because Alexander "cites no authority, and [the court] is aware of none,

suggesting that federal courts in Oregon may apply equitable tolling to § 1983 cases," this court

declines to do so.  *Reynolds v. Guisto*, No. CV 08-6261-PK, 2009 WL 2523727, at *3 (D Or

Aug. 18, 2009).

   Moreover, even if the doctrine of equitable tolling applies, it does not assist Alexander.

Alexander contends that he was prevented from filing this case until after the running of the

statute of limitations due to threats against him and his family by Dorn, similar threats by inmates

at the Federal Correctional Center in Tuscon, Arizona ("FCI Tuscon"), and his inability to access

his legal materials after his furlough from federal custody and reentry into state custody.

Immediately after their encounter, on either March 9 or 10, 2008, Dorn threatened Alexander and his family with bodily harm or arrest if Alexander filed a tort claim or pursued other legal action.  Alexander Decl., ¶ 4.  Nevertheless, while still in custody based on the charges resulting from his encounter with Dorn and housed at the Inverness Jail, on March 30, 2008, Alexander sent a letter to the City of Portland Mayor's Office outlining the events and seeking assistance in having the charges against him dismissed.  Stenquist Aff., ¶ 4 and Ex. 1. On May 5 and 8, 2008, Alexander sent letters to Randy Stenquist ("Stenquist"), a claims analyst in the City of Portland's Risk Management Division, documenting the encounter and his resulting injuries.  *Id*, ¶¶ 5-6 and Exs. 2-3.

Some time thereafter, Alexander was transferred into federal custody and apparently initially housed at the FCI in Sheridan, Oregon.  Because he was in federal custody, Alexander was unsure if Dorn could carry out any of his threats.  Alexander Aff., ¶ 5.  Despite these threats, on August 10, 2008, Alexander sent a Notice of Tort Claim to the City of Portland.  Stenquist Aff., ¶ 7 and Ex. 4.  Each of Alexander's communications, including the letter to the Mayor, the letters to Stenquist, and his Notice of Tort Claim, specifically identifies Dorn as the individual responsible for his injuries.  None of those communications mentions any threats by Dorn against Alexander or his family.

Some time between August 2008 and September 2009, Alexander was transferred to FCI Tuscon.  While at FCI Tuscon in September 2009, an unidentified family member told Alexander that he had received threatening telephone calls from "blocked" numbers and been told that Alexander was going to get "fucked up" if he did not drop his tort claim against Dorn and the

City of Portland.  Alexander Aff., ¶ 8.  A few days later, Alexander was threatened by two inmates at FCI Tuscon that if he did not prove to them he had dropped his claim, then they would "handle it another way."  *Id*, ¶ 9.  As a result of those threats, on September 27, 2009, Alexander sent a letter to the City of Portland indicating that he was withdrawing his tort claim and was "no longer interested in pursuing legal action against anyone for the damages sustained."  Stenquist Aff., Ex. 5, p. 1.

Alexander's federal sentence ended December 4, 2009.  The State of Oregon dropped its detainer, and Alexander was furloughed and instructed to take a Greyhound bus from Tuscon, Arizona, to Portland, Oregon, and then to self-surrender to the Oregon Department of Corrections.  Alexander Aff., ¶ 13.  As a result of this last-minute change, Alexander's property, including his legal materials, remained in the property room at FCI Tuscon.  *Id*, ¶ 14.  Because his legal materials were shipped from facility to facility and arrived first at Coffee Creek Correctional Facility after Alexander was already transferred to Eastern Oregon Correctional Institution ("EOCI"), and then arrived at EOCI after Alexander was transferred to the Oregon State Penitentiary, he did not receive his legal materials until January 2011.  *Id*, ¶ 15.

Equitable tolling requires Alexander to prove that he was "unable to obtain vital information bearing on the existence of his claim" *D.H.M.*, 2008 WL 1766727 at *5, or that "circumstances outside the control of the affected party make it impossible to comply with a statute of limitations."  *Rodriguez v. Williams*, No. CV 08-290-ST, 2010 WL 1542092, at *3 (D Or Feb. 25, 2010), *Findings and Recommendation adopted*, 2010 WL 1541962 (D Or April 14, 2010). Here, however, it was not "impossible" for Alexander to comply with the statute of limitations.

Even crediting his fear of bodily harm, that impediment was removed upon Alexander's

furlough from federal custody on December 4, 2009.  Alexander's defense is premised upon the

notion that he could do nothing to preserve his claims until he obtained his legal materials in

January 2011.  Alexander obviously knew the factual basis for his claims, given that he managed

to file a Notice of Tort Claim within the statutory deadline, and fails to explain why he was

prevented from initiating this case once furloughed from federal custody.  Nothing in the record

supports the conclusion that anything stood in his way.  In particular, he does not contend that

any of the prisons in which he was incarcerated lacked the basic legal materials which would

have permitted him to file a Complaint prior to the expiration of the statute of limitations.

Pleading this case merely required Alexander to satisfy the minimal notice pleading requirements

of FRCP 8, "bolstered by the 'less stringent standards' used to assess whether a *pro se* inmate's

complaint places [law enforcement] officials on notice of the nature of his claims."  *Alvarez v.

Hill*, 518 F3d 1152, 1157 (9th Cir 2008) (citations omitted).

Based on the lack of legal precedent for its application, and the lack of evidence to

support a finding in his favor even if it were applied, the doctrine of equitable tolling does not

assist Alexander.

**II.  Equitable Estoppel**

Alexander argues that the doctrine of equitable estoppel applies to excuse his late filing.

Equitable estoppel allows a plaintiff to file a claim after the statutory deadline:

> if the plaintiff can demonstrate that: (1) the defendant made
> specific promises, threats or inducements that prevented the
> plaintiff from filing suit; (2) those promises, threats or inducements
> actually caused the plaintiff to forbear filing the lawsuit; (3) the
> forbearance was reasonable; and (4) the plaintiff filed suit within a

> reasonable time after termination of the conduct causing such
> forbearance.

*D.H.M*, 2008 WL 1766727 at *4, quoting *M.N.O. v. Magana*, No. Civ. 03-6393-TC, 2006 WL

559214, at *2 (D Or Mar. 6, 2006).

 Alexander's assertion of a single direct threat by Dorn made on the same day as the

encounter, standing alone, is an insufficient premise for application of equitable estoppel given

that Alexander soon thereafter preserved his claim by filing a Notice of Tort Claim.  *See M.N.O.* ,

2006 WL 559214, at *4 (single death threat, followed by plaintiff "telling multiple people" about

the abuse she was suffering insufficient).  Alexander cites telephone calls to family members

from blocked numbers and threats by other inmates as a basis for applying the doctrine.

However, only evidence of a threat directly by Dorn will suffice.  *Id* ("Although plaintiff alleges

that Magana was abusive to her and that she was scared that he would arrest her or take some

retribution if she reported his actions, she does not provide evidence that Magana directly

threatened her.").

 Moreover, the only explanation Alexander offers for not filing his case after his furlough

from federal custody in December 4, 2009, and the expiration of the two-year statute of

limitations in March 2010, is that his "legal materials" were not available to him.  This, however,

is not a sufficient basis to equitably estop defendants where there is no evidence that they had

anything to do with the misrouting of Alexander's legal materials.  *Duncan v. Oregon*, No. CV

05-17470KI, 2007 WL 789433, at *8 (D Or March 14, 2007).  Thus, this equitable legal doctrine

also does not assist Alexander.

///

9 - FINDINGS AND RECOMMENDATION

## RECOMMENDATION

For the reasons stated above, defendants' Rule 12 Motions (part of #10) should be DENIED, their Alternative Motion for Summary Judgment (part of # 10) should be GRANTED, and a judgment should be entered in favor of defendants.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due August 4, 2011.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

This Findings and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED this 18th day of July, 2011.


s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge